BOROUGH OF CHATHAM ET AL., APPELLANTS, v. BOARD OF CONSERVATION AND DEVELOPMENT AND CITY OF EAST ORANGE, RESPONDENTS.

Submitted February 14, 1930—Decided October 20, 1930.

For the appellants, *Riker & Riker, Henry G. Pilch,* and *Robert E. Burke.*

For the respondents, *W. A. Stevens,* attorney-general, and *Walter C. Ellis.*

The opinion of the court was delivered by

CAMPBELL, J. The city of East Orange filed its application with the board of conservation and development to obtain leave to condemn lands in the borough of Florham Park, Morris county, for the purpose of increasing its water supply, which it hoped to secure from underground waters, by means of driven wells.

After several hearings and the taking of a considerable amount of testimony the leave prayed for by the city of East Orange was granted by the board upon condition that the amount of water taken from such proposed new source of supply should not exceed two million gallons per day.

These proceedings and judgment having been removed into the Supreme Court for review, by *certiorari,* that court affirmed them and dismissed the writ. From such judgment this appeal is taken. Here, as in the court below, numerous questions are raised and urged. We deal with those that appear to be important, of which two are dispositive of the appeal.

1. That the application to the board of conservation and development was insufficient.

We conclude that the court below was correct in its finding upon this question and we concur in the result reached by it.

2. That the notice of hearing was not published in such newspapers as required by the statute, the complaint being that there were newspapers published nearer to the municipalities and persons concerned than those in which the notice was published.

Upon this point the Supreme Court settled the question of fact and as there were proofs to support such finding, and we do not find it to be erroneous in point of law, such finding will not be disturbed in this court.

To this may be added, that there is no showing that all parties did not have adequate and sufficient notice. On the contrary, the fact is that all parties who could contest, ap-

peared and actually participated in the proceedings. Therefore, no one was harmed or prejudiced.

3. The approval and judgment of the board was not justified under the evidence in that from it, it did not sufficiently appear that public necessity, or, reasonably anticipated use, non-interference with other municipal supplies and non-injury to private interests, were established.

In this connection it is urged that the board, in reaching its conclusion, used and considered a report of a Mr. Critchlow, the head of the division of waters, an expert employed by the board. This seems to stand uncontradicted. This report was not presented at any hearing and the author of it was not interrogated, or cross-examined, with respect thereto. In fact there was no such opportunity. How far such report, and its contents, influenced the board in its conclusion and judgment it is impossible for us to say.

That the functions of the board are *quasi*-judicial was definitely settled by this court in *Oakland* v. *Bayonne*, 98 *N. J. L.* 806. Consequently the usual and recognized rules governing such bodies must be applied. These, reduced to their simplest form, are, that the parties in interest are entitled to be confronted with the witnesses and proofs both for and against them; to have the right of direct and cross-examination; and that the judgment be based entirely upon the proofs so adduced and obtained.

This is elementary and calls for no citation of authority. The use of the Critchlow report by the board was in violation of such recognized and orderly procedure, and, in itself, is sufficent to require a setting aside of the judgment of the board.

4. That the petitioner did not secure the consent of the North Jersey water supply commission.

Whether this was urged in the court below does not appear from anything contained in the opinion of that court. But, assuming that it was, and, therefore, is properly before us, there are, it seems to us, two reasons why it presents no reason for reversal.

First, we are of the opinion that *Pamph. L.* 1916, *p.* 138, § 18, which, it is urged, requires this consent, has no application to subterranean supplies of water such as here under consideration, and for that reason such consent is not required.

Second, if we should be wrong in this still such statute does not require such consent to be obtained before the application to, and judgment of, the board of conservation and development.

If required, it must be had before "obtaining" any new or additional supply. The present application only reaches to securing the consent of the board to take lands by condemnation in contemplation of the securing or "obtaining" a further supply. Such consent, if necessary, it seems to us, would be timely if secured after such permission is had and the lands obtained, provided, it is secured before actually "obtaining" the new or additional supply.

5. That the judgment of the board, under date of August 8th, 1928, is a nullity.

This seems to present two grounds. The first is that all the proofs were taken in the presence of one member of the board and not in the presence of a quorum.

This, however, seems to be permitted and justified by *Pamph. L.* 1924, *p.* 416.

The second is that on August 8th, 1928, only four of the eight members of the board were assembled in meeting, and, being a minority, they could not act, except to continue the meeting by adjournment. And further, that the duties of the board, being *quasi*-judicial, it is required to act upon such matters as come before it after a consideration by its members, of the proofs presented. This, it is apparent, from the depositions taken under the *certiorari* proceedings was not done, except by the single member who sat during the taking of the testimony. The remaining members appear to have found their conclusions from reports of that one member and the report of Mr. Critchlow, before referred to.

This is so contrary to the formalities of procedure required of judicial and *quasi*-judicial bodies as to instantly stamp it

as a legal impropriety requiring the nullifying of any finding so reached.

We do not undertake to say with what care and exactness the members of such a board must examine and consider the proofs in order to render a legally and factually sustainable judgment.

What we do hold is, that from the proofs before us in this case, the judgment of the board was not reached by means of well known and clearly established rules of judicial procedure.

Further, as has been referred to, only four members of the board were present on August 8th, but it is urged that at a meeting held September 5th, five members being a majority, were present, and each of such members signed the order or judgment of the board, and that at a still later meeting, held September 19th, six members were present, and they by formal resolution, adopted and ratified the proceedings and judgment of the minority who participated in the action taken August 8th. We conclude, however, that such action was ineffective, in legalizing the prior proceedings.

The statute under which the board was authorized to act provides, *inter alia:* "The decision upon any application shall be in writing signed by at least a majority of the members of the commission * * *." *Pamph. L.* 1910, *p.* 552, § 3. And the same section further provides: "Within ninety days after receiving the application the commission shall with all convenient speed either approve or reject the same or approve it subject to such reasonable terms and conditions as it may prescribe."

The application was filed May 26th, 1928. The time limited by the aforementioned statute expired August 24th, 1928.

The alleged approval of August 8th appears to be simply a resolution contained in the minutes of the proceedings of the board of that date. However, under the same date there was a decision or judgment in writing, signed by seven members of the board. It appears, however, that this was not actually signed by any member until September 5th, when it was signed by five and later sent to two others who signed it.

· We think it must be conceded that this does not come within and satisfy the requirements of the statute before referred to.

Without passing upon the question as to whether the acts · of a minority can be legalized by subsequent ratification by the majority, such attempt here, at the meeting of September 19th, 1928, was unavailing because it was out of the time limited by the statute.

For the reasons indicated the judgment below is reversed and the order or judgment of the board of conservation and development is set aside.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, CAMPBELL, BODINE, DALY, DONGES, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, WELLS, JJ.   12.